652 So.2d 79 (1995)
Wilbur J. SENTILLES and Jacquelyn B. Sentilles
v.
KWIK-KOPY CORPORATION.
No. 94-CA-1553.
Court of Appeal of Louisiana, Fourth Circuit.
February 23, 1995.
Rehearing Denied April 19, 1995.
*80 John D. Lambert, Jr., James L. Yates, Lambert & Lambert, New Orleans, for plaintiffs-appellees Wilbur J. and Jacquelyn B. Sentilles.
S. Daniel Meeks, Abbott and Meeks, New Orleans, for defendant-appellant Kwik-Kopy Corp.
Peter J. Klarfeld, David W. Koch, Brownstein, Zeidman and Lore, and Matthew R. Shay, Intern. Franchise Ass'n, Washington, D.C. 20005 for amicus curiae Intern. Franchise Ass'n.
Before KLEES, BYRNES and CIACCIO, JJ.
KLEES, Judge.
Defendant Kwik-Kopy Corporation appeals the district court's granting of partial summary judgment in favor of plaintiffs, Wilbur and Jacquelyn Sentilles. The district court declared the non-competition clause in the contract between Wilbur Sentilles and Kwik-Kopy to be illegal and unenforceable, and dismissed Kwik-Kopy's claim against plaintiffs for consequential damages based on the clause. We reverse.
In April 1984, Wilbur Sentilles entered into a written franchise agreement with defendant whereby Sentilles as franchisee obtained the right to operate a Kwik-Kopy Center on West Judge Perez Drive in Chalmette, Louisiana. In September 1991, Sentilles exercised his option under the contract to terminate the agreement. In connection with his operation and eventual termination of the franchise, Sentilles and his wife filed suit against Kwik-Kopy seeking a declaratory judgment declaring the franchise agreement to be null and void, and seeking the return of certain monies they had paid under the agreement. Alternatively, plaintiffs demanded that Article 12 of the franchise agreement, which contained the non-competition clause, be declared illegal and unenforceable. In an answer to the suit, Kwik-Kopy reconvened seeking payment of royalties and franchise fees allegedly owed by Mr. Sentilles as well as consequential damages for Mr. Sentilles' breach of Article 12 of the franchise agreement.
Plaintiffs filed a motion for partial summary judgment on the grounds that the restrictions on competition in Article 12 of the agreement were illegal and unenforceable and that defendant's claim for consequential damages should therefore be dismissed. Kwik-Kopy opposed the motion. The trial court granted the motion on February 2, 1994, with written reasons for judgment. Defendant timely filed this appeal.
On appeal, defendant contends that the trial court erred in three respects: (1) in holding that Louisiana law applies rather than Texas law, which is stipulated as the choice of law in the contract; (2) in applying La.R.S. 23:921, which refers to an "employer" and "employee," to the instant contract between a franchisor and franchisee; and (3) in granting partial summary judgment despite the existence of facts in dispute as to the nature of the relationship between Mr. Sentilles and Kwik-Kopy. As an appellate court, we must review the trial court's summary judgment de novo, using the same criteria applied by the lower court to determine whether summary judgment is appropriate. Under Louisiana Code of Civil Procedure article 966(B), summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. Williams v. City of New Orleans, 621 So.2d 3, 5 (La.App. 4th Cir. 1993). Reviewing the judgment according to this standard, we find that the trial court erred in granting the plaintiffs' motion.
Article 12 of the franchise agreement provides, in pertinent part:
12.01 During the term of this Agreement and for a period of two (2) years after termination of this Agreement for any reason, FRANCHISEE agrees to not be associated, either directly or indirectly, by virtue of being an employee, proprietor, a partner, stockholder, agent or through family relationships with a competing instant printing business within *81 the trade area served by the Kwik-Kopy Center of this franchise;
* * * * * *
12.03 During the term of this Agreement and for a period of two (2) years after termination of this Agreement for any reason, FRANCHISE agrees that the trade area, if not otherwise definable, shall be encompassed within an area defined by a 50-mile radius from a business location of any Kwik-Kopy Center....
Section 12:03 was modified by letter addendum dated February 24, 1986, in which the president of Kwik-Kopy advised Mr. and Mrs. Sentilles that the geographical restriction would be limited to a three mile (rather than a fifty mile) radius of any Kwik-Kopy Center.
The franchise agreement contains a choice of law clause stipulating that the agreement is to be interpreted under Texas law. However, in Louisiana, a contractual agreement as to choice of law is subject to certain limitations. Parties may contractually stipulate to choice of law unless such stipulations would violate legal or strong public policy considerations. Francois Chiropractic Center v. Fidele, 630 So.2d 923 (La.App. 4th Cir.1993). In his reasons for judgment, the trial judge noted that Louisiana has a strong public policy against enforcement of noncompetition agreements between employers and employees. This policy existed and was followed in caselaw before it was first codified in 1934, in La.R.S. 23:921. See Orkin Exterminating Co. v. Foti, 302 So.2d 593, 596 (La.1974) At the time Mr. Sentilles entered into the franchise agreement with Kwik-Kopy, the statute provided:
No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years.
La.R.S. 23:921 (prior to 1989 amendments). In 1989, the statute was amended. The new version retained the general prohibition of non-competition agreements, but delineated three specific exceptions: the sale of a business, the dissolution of a partnership, and any employer/employee agreement in which the restraint on competition is confined to specific parishes or municipalities and does not exceed two years from the date of termination of employment. In 1991, an exception was added which specifically permits noncompetition agreements between the parties to a franchise as long as the duration of the non-competition period does not exceed two years from the severance of the franchise relationship. R.S. 23:921(E) (West 1994).
The trial judge concluded that the 1989 (and subsequent) amendments were not to be applied retroactively. He further concluded that according to Winston v. Bourgeois, Bennett, Thokey & Hickey, 432 So.2d 936 (La. App. 4th Cir.1983), R.S. 23:921 is applicable to "business relationships other than strictly personal employer/employee" relationships. See Reasons for Judgment. Finally, the trial court held that because non-competition clause in the franchise agreement offended the public policy of Louisiana at the time it was signed, Louisiana law must be applied to invalidate the non-competition provision.
After reviewing the law and the facts, we conclude that the trial court's decision to apply Louisiana law was in error. The public policy of Louisiana, both prior to 1934 and later, as expressed in R.S. 23:921, has always been to prohibit (or severely restrict) non-competition agreements between employers and employees. In Winston, supra, which was cited by the trial court as support *82 for its decision, we considered whether to apply the prohibition of R.S. 23:921 to invalidate the non-competition provision of a partnership agreement. We first noted that: "Even though this statute refers only to an employer/employee, it has been judicially extended to various relationships which are `essentially' employer/employee." 432 So.2d at 938. After reviewing the jurisprudence, we stated:
In summary, to determine the application of LSA-R.S. 23:921, numerous factors must be considered. The basic premise underlying the prohibition stems from the fundamental right of individuals to seek success in our free-enterprise society. The concept is to protect those whose job position creates a disparity in bargaining power between the parties. The form of the contract is immaterial as is the label tacked to the individual: employee, associate, partner, independent contractor, or shareholder. Pertinent inquiry includes whether all concerned are bound equally to the covenant; whether the terms are fair to each party in all respects; the amount of control over the individual; if the person is subject to the wishes of a controlling majority; the circumstances under which the contract was executed; the effect on the individual's right to engage freely in his occupation after the association terminates.
Id., at p. 940.
We then examined the relationship of the partners according to this criteria and concluded that it was not essentially an employer/employee relationship, and therefore the non-competition provision was valid. Id. at 940-941.
The Winston decision did nothing to alter Louisiana's longstanding public policy that non-competition agreements in employer/employee relationships are disfavored. However, in order for that policy to apply, the relationship, when examined, must be "essentially" an employer/employee relationship, regardless of what it is named in the contract.
Therefore, to determine whether Louisiana's public policy should override the parties' choice of law in the instant case, we must first determine whether the parties' relationship is "essentially" an employer/employee relationship. In making this determination, the criteria we enunciated in Winston are useful, but not exclusive. All aspects of the relationship which have any bearing upon the issue should be considered. One of the most significant factors we enunciated in Winston is the degree of control exercised by one party over the other. For example, in Simpson v. Kelly Services, Inc., 339 So.2d 490 (La.App.2d Cir.1976), writ denied, 341 So.2d 1121 (La.1977), the Second Circuit applied a control test to determine whether the plaintiff was an employee (which would trigger the application of R.S. 23:921) or an independent contractor. The court concluded:
"It is well settled by our jurisprudence that besides other factors, the most important test in determining `whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.' It is also well settled that whether the employer `actually exercises control or supervision' over the movements and the services rendered by the employee, such a fact is of no great moment, the `important question is whether, from the nature of the relationship, he had the right to do so'.
* * * * * *
While Mrs. Simpson was subject to some degree of control by Kelly in the procedures she followed in the operation of the branch office (billing and reporting procedures, use and advertisement of the company name, utilization of company forms), we do not find that this degree of control was sufficient in this type operation to make Mrs. Simpson an employee of Kelly Services.
339 So.2d at 494-95 (Citations omitted).
In the instant case, there is no indication that the trial court actually examined the relationship between Sentilles and Kwik Kopy to determine if it was essentially that of employer/employee. However, our consideration of the facts in the record leads us to conclude that the franchisor/franchisee relationship which existed in this case was not *83 essentially an employer/employee relationship. Although Kwik Kopy provided instruction manuals, advice and assistance, it did not have the right to control the day-to-day operations of Mr. Sentilles' business. The only rights of control retained by Kwik-Kopy (the right to approve Sentilles' sales and marketing materials, the right to require reports and to inspect Sentilles' books, the right to approve any proposed transfer of the franchise, and the right to assume Sentilles' lease upon termination of the franchise) were those designed to insure the uniformity and quality of services offered to the public under the Kwik-Kopy name. Sentilles, however, set his own prices; hired, fired and supervised his own employees and bore the payroll expenses; set his own business hours; leased his own store space; purchased his own supplies and equipment (other than startup supplies); maintained his own insurance and workers compensation coverage; kept his own books; set his own policies on the extension of credit to customers; and bore the risk of non-payment by customers. These factors reveal a lack of meaningful control on the part of Kwik-Kopy, which is a strong indicator that no employment relationship existed. Also unlike a typical employment relationship, Kwik-Kopy was not free to terminate Sentilles at will, nor was Sentilles free to quit the business without giving ninety days notice to Kwik-Kopy. The contract allowed Sentilles to transfer his franchise rights to others, subject to Kwik-Kopy's approval. Sentilles therefore had a high degree of independence which is uncharacteristic of an employment relationship.
Moreover, there was not the same disparity in bargaining power between Sentilles and Kwik-Kopy as would exist between a typical employer and employee. Sentilles had a substantial financial investment in the business, a substantial risk, and primary control in the determination of his revenues, operating expenses, and ultimate profit. Although he signed a standard franchise agreement, he was free to reject Kwik-Kopy, take his investment and join another system.
The factor most relied upon by plaintiffs herein to indicate an employment relationship is the lack of reciprocity in the noncompetition agreement, that is, the fact that Sentilles was prohibited from directly competing with Kwik-Kopy but Kwik-Kopy was not prohibited from setting up a competing business near Sentilles. We agree with defendant that this factor is not as significant in a franchise relationship, where the franchisor is essentially selling the use of its name and reputation to the franchisee, as it would be in a partnership context, where its presence might indicate equality among the partners. In this sense, a franchise is much more akin to the sale of a business, and the franchisee's agreement not to compete is part of the compensation for the franchisor's transfer of its reputation and know-how. Notably, there is now a specific exception to R.S. 23:921 for the sale of the goodwill of a business.
In a franchise context, the fairness of the non-competition agreement, another factor we cited in Winston, is more significant than the lack of reciprocity. The agreement in this case is fair because all Kwik-Kopy franchisees are subjected to the same restrictions on competition, and because those restrictions are not unreasonable.
Therefore, because we find that the franchise relationship in the instant case is not "essentially" an employment relationship, the non-competition agreement does not violate the public policy of Louisiana. Therefore, the parties' choice of Texas law must be respected.
Accordingly, for the reasons given, we reverse the trial court's granting of plaintiff's motion for partial summary judgment. We remand the matter to the trial court for determination of the legality of the agreement according to Texas law, and for further proceedings consistent with this opinion.
REVERSED AND REMANDED.