Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,783-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

HEARD, McELROY & VESTAL, LLC                Plaintiff-Appellant

versus

JOHN C. SCHMIDT AND JOHN C. SCHMIDT, CPA, LLC        Defendants-Appellees

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 610442

Honorable Michael A. Pitman, Judge

* * * * *

COOK, YANCEY, KING & GALLOWAY     Counsel for Appellant
By: Bernard S. Johnson

DOWNER, JONES, MARINO & WILHITE     Counsel for Appellees
By: Allison A. Jones

* * * * *

Before WILLIAMS, STEPHENS, and THOMPSON, JJ.

**WILLIAMS, C.J.**

The plaintiff, Heard, McElroy & Vestal, LLC, appeals a judgment granting a preliminary injunction to prohibit the defendants, John Schmidt and John Schmidt, CPA, LLC, ("Schmidt") from carrying on or engaging in a business in competition with plaintiff and from soliciting plaintiff's clients for a two-year period, but allowing Schmidt to work as an employee for a competitor of plaintiff. In its answer to the appeal, Schmidt seeks reversal of that part of the judgment granting a preliminary injunction. In the alternative, Schmidt seeks modification of the judgment to allow Schmidt to engage in his business in competition with plaintiff or to solicit plaintiff's clients. For the following reasons, we affirm.

## FACTS

In 2011, John Schmidt became a member of Heard, McElroy & Vestal, LLC ("HMV"), an accounting services firm, after working as an employee for several years. In July 2013, John Schmidt CPA, LLC ("Schmidt LLC"), became a corporate member of HMV, replacing Schmidt, who signed the HMV operating agreement individually and on behalf of Schmidt LLC, agreeing to be bound by its provisions. Article 22 of the operating agreement provides that the members of HMV may terminate a member at any time for cause, which includes conduct considered by the other members to be unbecoming to a CPA or detrimental to HMV's reputation. In June 2018, two-thirds of the members voted to terminate Schmidt LLC as a member of HMV for cause, based on a finding that Schmidt had acted in a manner unbecoming to a CPA by failing to advise other members that an HMV employee was planning to leave her job and

take a large client of HMV with her and by preparing tax returns for taxpayers without billing them as HMV's clients.

Under the noncompetition provisions of Article 25 of the operating agreement, once Schmidt LLC was terminated for cause he was prohibited from:

(i) Engaging in the performance of accounting services … practiced by him while a member in HMV for persons who reside, or entities with a place of business located, within the Area in any capacity as a principal or on his own account, or solely or jointly with others as a partner, stockholder or holder of any equity security, or member in a limited liability company, or in any capacity for an entity in which such former member owns or does not own an equity interest, including but not limited to as a director, manager, officer, agent or employee; and/or

(ii) Soliciting clients of HMV that, if a natural person, resides within the Area, or if the client is an entity, has a place of business located within the Area;

(iii) Serving as an executor or trustee for any natural person who resides within the Area that is a client of HMV, or that owned an interest in an entity that has a place of business located within the Area that is a client of HMV; and/or

(iv) Serving as a voting member on the board of Directors of a company nonprofit organization that HMV is auditing at the time of the termination date or at any time during the restricted term. The former member shall resign as a member of the Board of Directors or other governing board of any such company.

In August 2018, HMV filed a petition seeking preliminary and permanent injunctions, declaratory relief and damages against defendants, John Schmidt and Schmidt LLC (jointly referred to as "Schmidt"). The original and amended petitions alleged that Schmidt had engaged in activities that were restricted by the noncompetition clause of the operating agreement.

After a hearing, the trial court issued written reasons granting in part and denying in part HMV's request for injunctive relief. The trial court found that Article 25 was overbroad in scope and geographic range under La. R.S. 23:921(L), but that the noncompetition agreement was enforceable

2

after reformation by the court. The trial court rendered judgment ordering that Schmidt may not carry on or engage in his own business in competition with HMV and may not solicit HMV's clients for a period of two years. The trial court further ordered that Schmidt was entitled to seek employment with and be employed by HMV's competitors. HMV appeals the judgment. Schmidt filed an answer seeking reversal of the injunctive relief ordered.

## DISCUSSION

HMV contends the trial court erred in finding that La. R.S. 23:921(L) does not allow a member of an LLC to contractually agree not to seek employment with a competitor of the former company after termination. HMV argues that the trial court's determination is based on an incorrect interpretation of the statute.

The starting point for the interpretation of any statute is the language of the law itself. *Succession of Boyter*, 99-0761 (La. 1/7/00), 756 So.2d 1122. The meaning and intent of a statute is determined by considering the law in its entirety. A statute must be interpreted in a manner consistent with logic and the presumed intent of the legislature. *Succession of Boyter*, *supra*. When the law is susceptible to different meanings, the language must be interpreted as having the meaning that best conforms with the purpose of the law. La. C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the statute as a whole. La. C.C. art. 12.

Louisiana has long followed a public policy disfavoring employment noncompetition agreements. *Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC*, 929 F.Supp.2d 597 (W.D. La. 2013); *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So.2d 294.

3

This public policy is expressed in La. R.S. 23:921(A)(1), which provides that every contract or agreement by which anyone is restrained from exercising a lawful profession, trade or business of any kind, except as provided by the statute, shall be null and void. The public policy restricting noncompetition agreements is based on the intent to prevent an individual from contractually depriving himself of the ability to earn a living. *Yorsch v. Morel*, 2016-662 (La. App. 5 Cir. 7/26/17), 223 So.3d 1274. Such contracts are in derogation of the common right to work and must be strictly construed against the party seeking their enforcement. *Innovative Manpower, supra.*

A limited liability company and the individual members of such limited liability company may agree that such members will refrain from carrying on or engaging in a business similar to that of the limited liability company and from soliciting customers of the limited liability company within a specified parish or parishes, or parts thereof, for as long as the company carries on a similar business therein, not to exceed a period of two years from the date membership ceases. A violation of this subsection shall be enforceable under Subsection H of the statute. La. R.S. 23:921(L). For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing. La. R.S. 23:921(D).

In its brief, HMV points out that Subsection L uses the same phrase, "carrying on or engaging in" a business similar to the former company, that the legislature previously defined in subsection D as including employment by a competing business. HMV argues that for the sake of consistency, this

4

definition of carrying on or engaging in a similar business in Subsection D must be applied to the same phrase in Subsection L, such that Schmidt could agree to refrain from being employed by a competitor of HMV as provided in the noncompetition agreement. However, the language of the statute demonstrates that Subsection D is applicable specifically for "the purposes of Subsections B and C."

Additionally, we note that although Subsection L was added to R.S. 23:921 after Subsection D, the legislature did not make Subsection D applicable to Subsection L or specify that L was subject to Subsection D, as was done with Subsection H. HMV asserts the trial court's interpretation is inconsistent in treating employees and members of limited liability companies differently with respect to restricting their future ability to compete. However, treating employees and members differently may be based on the contrasting roles of each in the entity, just as is done by HMV, in which members sign the operating agreement and decide how the LLC will be managed while employees do not.

Recognizing that noncompetition agreements are in derogation of the common right and must be strictly construed against the party seeking their enforcement, we are constrained to limit application of Subsection D to those situations addressed in Subsections B and C. Consequently, we cannot say the trial court erred in determining that pursuant to Subsection L, Schmidt may be prohibited from acting as a member or owner of a competitor of HMV, but he is not restricted from being employed by a competing business. Thus, this assignment of error lacks merit.

HMV contends the trial court erred in finding that R.S. 23:921( C) did not apply to Schmidt. HMV argues that Subsection C applies to Schmidt

5

because he was an agent of HMV and as a result could agree to refrain from being employed by a competing business.

Any person who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and from soliciting customers of the employer within a specified parish or parishes for a period not to exceed two years from termination of employment. La. R.S. 23:921( C). A mandate is a contract by which a person, the principal, confers authority on another, the mandatary, to transact one or more affairs for the principal. La. C.C. art. 2989.

HMV argues in its brief that Schmidt was in effect an agent of HMV because he acted on behalf of HMV in supervising the communication with and assessing the needs of certain clients. Contrary to HMV's argument, the evidence presented does not establish there was an agreement between the parties providing that Schmidt was employed as an agent or mandatary for HMV. The HMV operating agreement and petition refer to Schmidt as a member, not as an agent or employee. Members of HMV, not employees or agents, were asked to sign the operating agreement. Based upon this record, we cannot say the trial court erred in finding that Subsection C is not applicable in this case because Schmidt was not an employee or agent of HMV. Thus, the assignment of error lacks merit.

In answer to the appeal, Schmidt contends the trial court erred in granting in part HMV's request for a preliminary injunction. Schmidt argues that the noncompetition provision in Article 25 of the operating agreement is null and void because the language does not comply with La. R.S. 23:921.

6

For a noncompetition agreement to be valid under La. R.S. 23:921(L), the scope of the agreement must be confined to an agreement (1) to refrain from carrying on or engaging in a business similar to that of the limited liability company and soliciting its customers (2) within a specified parish or parishes (3) for as long as the limited liability company carries on a similar business therein, not to exceed a period of two years from the date that membership ceases. Thus, the statute limits (1) the scope of the activity from which one agrees to refrain, (2) the geographic area in which one agrees to refrain from that activity, and (3) the time period during which the agreement to refrain from the specified activity may be effective. *Yorsch v. Morel, supra.*

In this case, the trial court reviewed the provisions of Article 25 and determined that the noncompetition agreement is overbroad in scope and geographic range. The trial court specifically found that the agreement's definition of clients made it difficult to determine the limits of solicitation and that the geographic range improperly extended to locations where HMV might intend to do business. Based upon this record, the trial court did not err in concluding that the noted provisions of the noncompetition agreement did not comply with R.S. 23:921(L). Considering the noncompliance of Article 25 with the statute, we find that the trial court was reasonable in considering whether the noncompetition agreement could be reformed rather than declared null and void. Thus, this assignment of error lacks merit.

In two assignments, Schmidt contends the trial court erred in reforming the overbroad noncompetition agreement. Schmidt argues that the trial court should have declined to reform Article 25 because of the

7

numerous violations of the statute, including the overbroad definitions of solicitation and clients.

A noncompetition agreement is a contract between the parties and should be construed according to the general rules of contract interpretation provided in La. C.C. arts. 2045-2057. The interpretation of a contract is the determination of the common intent of the parties with courts giving the words in the contract their generally prevailing meaning. La. C.C. arts. 2045, 2047; *SWAT 24, supra*.

In the present case, a severability clause is contained in Article 25.1(e), which provides in pertinent part:

> It is the intent and desire of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, to the extent that the covenant hereunder shall be adjudicated to be invalid or unenforceable in any one such jurisdiction, this Agreement shall be deemed amended to reform the portion thus adjudicated to be invalid or unenforceable in such a manner to allow the restriction to be enforced to the broadest extent consistent with the intent of the parties[.]

> If any court of competent jurisdiction shall at any time deem the Restricted Term too long, the Area too extensive, the restrictions too broad or any other provision of this Agreement to be invalid, the other provisions of this Agreement shall nevertheless stand, and otherwise consistent with this Agreement, . . . the restrictions shall be deemed to be the broadest permissible by law under the circumstances. The parties hereto agree that they shall request the court in each case to reduce the Restricted Term, the restrictions and/or the Area to the maximum permissible duration, breadth or size.

In the appellate brief, Schmidt asserts that the trial court should not have reformed Article 25.1 because the overbroad language required excessive revisions. However, we note that the operating agreement's severability clause reflects the parties' intent that if possible, the court should reform the agreement by excising any offending language.

8

The record shows that in reforming Article 25.1 of the operating agreement, the trial court narrowed the geographic range to locations where HMV conducted business activities, removed sentences from the solicitation provision, deleted part of the definition of client and deleted the provision that prohibited Schmidt from being employed by HMV competitors. Although the trial court's revisions were fairly extensive, we cannot say the trial court abused its discretion in deciding to reform Article 25.1 by deleting the overbroad provisions, resulting in an enforceable noncompetition agreement.

Schmidt argues that even as edited by the trial court, Article 25.1(a)(i) violates R.S. 23:921 by prohibiting Schmidt from performing accounting services for persons who reside, or entities with a location, in the specified geographic area and by prohibiting Schmidt from carrying on a business that is not similar to that of HMV.

Article 25.1(a)(i) prohibits Schmidt from performing accounting services practiced by him while a member of HMV for persons who reside, or entities with a place of business located, in the specified area. The language of this provision suggests that the reference to residence or place of business relates to the question of where the accounting services would be performed, so that Schmidt could not perform the services he practiced at HMV in the specified parishes, but could perform such services in Claiborne Parish, to use Schmidt's example. Regarding the contention that Article 25.1 improperly restricts Schmidt from engaging in a dissimilar business, we find that the reference in Article 25.1(a)(i) to engaging in the services that Schmidt performed as a member of HMV may reasonably be interpreted to refer to carrying on a business similar to that of HMV.

Based on the language of the provision in its entirety, we find that the noncompetition agreement as revised by the trial court is in compliance with R.S. 23:921(L). Thus, these assignments of error lack merit.

Schmidt also contends the trial court erred in failing to find that HMV waived enforcement of Article 25. Schmidt argues that HMV waived the noncompetition provisions by agreeing that Schmidt could perform work for HMV clients if he did not initiate the contact.

Waiver is the intentional relinquishment of a known right, power or privilege. *Steptore v. Masco Construction Co., Inc.*, 93-2064 (La. 8/18/94), 643 So.2d 1213.

In this case, Schmidt testified that at a meeting with Robert Dean, managing member of HMV, and Roy Prestwood in June 2018, Dean stated that HMV clients could choose where their work would be done as long as Schmidt did not solicit such business. However, both Dean and Prestwood testified that Dean had not made such a statement. In addition, HMV introduced into evidence an email from Dean to Schmidt stating that Article 25 would be operable unless Schmidt proposed a modification that was accepted by the members of HMV.

The trial court heard the conflicting testimony and did not address the issue of waiver in either its written reasons or the judgment, implicitly finding that HMV had not waived the right to enforce the noncompetition agreement. The evidence presented supports such a finding. Thus, the assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed one-half to the appellant, Heard, McElroy

10

& Vestal, LLC, and one-half to the appellees, John Schmidt and John

Schmidt, CPA, LLC.

**AFFIRMED.**