WILLIAMS, J.
iiThe defendants, Jimmy Starks and Billy Edwards, appeal a trial court order dismissing the dissolution proceedings as to Endurall, Inc., and the denial of their motion for an order dissolving the corporation. The district court found that the reason for dissolution no longer existed as a result of the sale of corporate stock. For the following reasons, we affirm.
FACTS
Beginning in the 1980s, Billy Edwards (“Edwards”) and Jimmy Starks (“Starks”) owned and operated Down Hole Enterpris *822 es, Inc., which manufactured and sold rod guides that are used in the oil and gas industry to prevent well tubing leaks. In 2004, David Pattridge and Gary Gardner became partners with Edwards and Starks to form Endurall, Inc. (“Endurall”). The Endurall shareholders were Edwards, Starks, and Pattridge, who each owned 33% of corporate stock, and Gardner, who owned 1% of the stock. Pattridge was Endurall’s President/CEO, Edwards and Starks were Vice Presidents and Gardner was the Secretary-Treasurer. Endurall then purchased the assets, including proprietary information, of Down Hole Enterprises, which was dissolved. Each shareholder also signed an agreement not to compete with Endurall or disclose its proprietary information.
For a number of years, Endurall operated at a profit without significant disagreement among the corporate officers. Then, in August 2012, Starks, Edwards and his son, Greg Edwards, joined with others to form Vector Energy Solutions Company (“Vector”). Billy Edwards was hired as Vector’s Vice President of Development. Pattridge, Gardner and |2Endurall were not informed of the formation of Vector. After learning that Edwards and Starks had apparently used Endurall’s proprietary information in marketing Vector to a potential client, Pattridge and Gardner terminated Edwards and Starks from their positions with Endurall.
In September 2012, Pattridge and Gardner filed a lawsuit alleging that the defendants, Edwards and Starks, had breached their fiduciary duties to Endurall by using its proprietary information for the benefit of Vector. Subsequently, defendants filed a petition for liquidation seeking the dissolution of Endurall based on an irreconcilable deadlock of the board of directors and shareholders. In May 2013, the district court rendered judgment ordering the involuntary dissolution of Endurall under court supervision pursuant to LSA-R.S. 12:143 and appointing H.E. Richard, Jr., LLC, as the liquidator of Endurall.
The liquidator then submitted to the court a liquidation plan proposing the auction of either the assets or the stock of Endurall. In July 2013, the district court ordered the dissolution of Endurall by auction of 100% of the corporation’s stock. Participation in the auction was limited to the existing shareholders under an agreement signed by the parties. At the auction, Pattridge and Gardner were the successful bidders. Edwards and Starks were each paid $1,122,000 for their shares of stock. After the auction of stock, Endu-rall and the liquidator filed a joint motion to dismiss the dissolution proceedings on the grounds that the sale of stock had removed the deadlock and the cause for dissolution no longer existed.
On August 12, 2013, the district court rendered judgment dismissing | ¡¡the dissolution proceedings. On the same day, defendants filed an objection to the dismissal of the proceeding and a motion for a rule to show cause why an order declaring that Endurall had been dissolved should not be issued. After a hearing, the district court denied the rule for an order dissolving the corporation. Defendants appeal the judgment.
DISCUSSION
The defendants contend the district court erred in ordering the sale of corporate stock by private auction as the method of dissolution of Endurall. Defendants argue that the stock sale did not comply with the dissolution statute because they were effectively forced to sell their shares.
A corporation may be dissolved and liquidated either voluntarily or involuntarily. Proceedings that are involuntary shall be subject to court supervision. The dissolu *823 tion proceeding takes effect when the court has appointed a judicial liquidator. At such time, all of the rights and duties of the officers and board of directors shall be vested in the court-appointed liquidator. LSA-R.S. 12:141.
The judicial liquidator shall proceed with the liquidation of the corporation’s affairs under court supervision. LSA-R.S. 12:146(B). In pertinent part, LSA-R.S. 12:146(C) provides:
A judicial liquidator in dissolution proceedings shall have full authority to retain counsel and auditors, and to prosecute and defend actions; shall have authority to compromise, compound and settle claims by or against the corporation upon such terms as he deems best, subject to supervision by the court; and shall have such other powers as the court may in its discretion grant, which, without limiting the scope of the court’s discretion, may include any or all powers enumerated in R.S. 12:145(C).
| ¿The liquidator shall have authority to sell and convey the property of the corporation at public or private sale on such terms as seem best, to vote shares of stock and to “do any and all things which may be necessary, proper or convenient for the purpose of liquidating the corporation.” LSA-R.S. 12:145(C). Since officers and directors are deemed to stand in a fiduciary relation to the corporation and its shareholders and must discharge their duties in good faith, the liquidator, who is vested with the duties of the officers and directors during dissolution, owes the same fiduciary duty to each shareholder. Levy v. Billeaud, 443 So.2d 539 (La.1983).
In the present case, the liquidator submitted to the trial court a plan for dissolution through a sale of either the corporation’s assets or stock. The liquidator opined that, based on a comparison of the alternatives by a CPA, the stock sale would result in the highest value for all of the shareholders by preserving the non-compete agreements and by realizing substantial tax savings. After considering the liquidator’s recommendation, the trial court found that the stock sale would be in the best interest of all shareholders. The defendants then signed an agreement regarding the procedure for the auction sale of stock.
In their brief, defendants contend the dissolution statute does not allow the district court to order the sale of stock. We note that although Section 145 does not specifically list selling stock among the liquidator’s powers, Section 146(C) expressly provides that the district court’s discretion in granting authority to the liquidator is not limited to those enumerated powers. Further, the statute provides that the liquidator shall | shave such powers as the court may in its discretion grant, including the authority to take any actions which may be necessary, proper or convenient for dissolution. The statute gives the district court broad discretion in the supervision of dissolution proceedings. Thus, the statutory language does not support the defendants’ contention that the stock sale fails to comply with the law. After reviewing the record and the applicable law, we cannot say the trial court abused its discretion in approving the sale of stock by the liquidator. This assignment of error lacks merit.

Dismissal of Dissolution Proceedings

The defendants contend the trial court erred in dismissing the dissolution proceeding. Defendants argue that the court should have declared Endurall dissolved following the stock sale because the effect of the stock auction was liquidation of the corporation.
When a corporation has been “liquidated completely” and the proceeding is subject *824 to court supervision, the court shall make an order declaring the corporation to be dissolved. LSA-R.S. 12:148(A)(1). The court may dismiss a dissolution proceeding under its supervision at any time before the corporate existence ceases, upon a showing that cause for dissolution no longer exists. LSA-R.S. 12:149. Courts are required to give effect to all parts of a statute and should not interpret a statute to make any part superfluous or meaningless if that result can be avoided. Pepper v. Triplet, 2003-0619 (La.1/21/04), 864 So.2d 181.
In the present case, defendants sought involuntary dissolution on the grounds that the Endurall board of directors was irreconcilably deadlocked. | ,¡The trial court then ordered a sale of stock among the existing shareholders to maintain the corporation as a going concern and thereby obtain the highest value for those shareholders. This purpose was expressed to the defendants in the liquidator’s plan. Plaintiffs were the winning bidders and paid defendants $1,122,000 each for their shares of stock. There is no showing that defendants received less than fair market value for their shares. As a result of the stock sale, Pattridge and Gardner remained as the only shareholders and directors of Endurall.
The defendants argue that because the court ordered a stock salé as the méthod of dissolution, the court could not then validly determine that the result of the sale had eliminated the cause for dissolution. However, the statutory language does not preclude such an outcome. Contrary to the defendants’ argument, Section 148 is not applicable in this situation because Endurall was not completely liquidated by a sale of all corporate assets. Further, Section 149 expressly provides that the court may dismiss a dissolution proceeding any time before the corporate existence ceases upon a showing that the cause for dissolution no longer exists. The statute does not require some “natural resolution of the corporate deadlock” as asserted by defendants in their brief.
Additionally, defendants have not shown that the law requires that once an action for dissolution has been filed the corporation must inevitably be dissolved. Such an interpretation would make Section 149 superfluous and ignores the statutory language providing that involuntary dissolution proceedings are subject to court supervision. The court’s role includes 17monitoring the proceeding and assessing, as in this case, whether the cause which prompted the action for involuntary dissolution continues to exist.
The record shows that Endurall and the liquidator demonstrated to the court that cause for dissolution no longer existed upon the plaintiffs’ purchase of 100% of the corporate stock. Pursuant to Section 149, we conclude that the trial court acted within its discretion in dismissing the dissolution proceeding based upon this showing. Thus, the assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment dismissing the involuntary dissolution proceeding is affirmed. Costs of this appeal are assessed to the appellants, Jimmy Starks and Billy Edwards.
AFFIRMED.