LOLLEY, J.
11 This appeal arises from the Twenty-Sixth Judicial District Court for the Parish of Bossier, State of Louisiana, which rendered judgment granting an injunction in favor of plaintiffs, David Pattridge, Gary *194 Gardner, and Endurall, Inc., enforcing the non-competition and proprietary information agreement between Billy Joe Edwards and Endurall, Inc. For the following reasons, we affirm the trial court’s judgment.
FACTS
In the 1980s, Billy Joe Edwards and Jimmy Starks founded and operated Down Hole Enterprises, Inc., which manufactured and sold rod guides that are used in the oil and gas industry to prevent well tubing leaks. In 2004, David Pattridge and Gary Gardner became partners with Edwards and Starks to form Endurall, Inc. (“Endurall”). The Endurall shareholders were Edwards, Starks, and Pattridge, who each owned 33% of the corporate stock, and Gardner, who owned 1% of the stock. Pattridge was Endurall’s president and CEO, Edwards and Starks were vice-presidents, and Gardner was the secretary and treasurer. During the formation of Endu-rall, all four shareholders and officers, signed a non-competition and proprietary information agreement (the “non-compete”). It specified that the signer would not participate in any business competing with Endurall for 24 months after termination as a shareholder. Each of the four shareholders also acknowledged that signing the non-compete was an essential condition to the issuance of stock. After En-durall was incorporated, it purchased the assets, including proprietary information, of Down Hole Enterprises, Inc., which was then dissolved. Endurall operated at a profit without significant 12disagreement among the corporate officers for a number of years, until August 2012, when Starks, Edwards and his son, Greg Edwards, joined with others to form Vector Energy Solutions Company (“Vector”). Pattridge, Gardner, and Endurall were not informed of the formation of Vector or that Billy Joe Edwards had been hired as Vector’s vice-president of development. After learning that Edwards and Starks had apparently used Endurall’s proprietary information in marketing Vector to a potential client, Pat-tridge and Gardner terminated Edwards and Starks from their positions with Endu-rall.
In September 2012, Pattridge and Gardner filed a petition alleging that Edwards and Starks had breached their fiduciary duties to Endurall by using its proprietary information for the benefit of Vector. Subsequently, Edwards and Starks filed a petition for liquidation seeking the dissolution of Endurall based on an irreconcilable deadlock of the board of directors and shareholders. The trial court appointed a liquidator and ordered the dissolution of Endurall by auction of 100% of the corporation’s stock. Participation in the auction was limited to the four existing shareholders under an agreement signed by the parties. At the auction, Pattridge and Gardner were the successful bidders. Edwards and Starks were each paid $1,122,000.00 for their shares of stock. After the auction, Endurall and the liquidator filed a joint motion to dismiss the dissolution proceedings on the grounds that the stock sale had removed the deadlock and the cause for dissolution no longer existed. The trial court granted this motion, and Edwards and Starks appealed. This court affirmed the trial court’s decision |3to adopt the liquidator’s plan of a stock sale and to dismiss the dissolution proceedings. See Pattridge v. Starks, 49,-239 (La.App.2d Cir.09/24/14), 149 So.3d 820. The sale of all of Edwards’ shares of stock in Endurall effectively terminated his status as a shareholder.
After the sale of his stock in Endurall, Edwards assisted his son in founding DHE, LLC, a company intended to compete directly with Endurall in the rod guide business. DHE, LLC opened an *195 office in Benton, Louisiana, less than 20 miles from Endurall’s headquarters. It then began manufacturing rod guides, much like the ones manufactured by Endu-rall, and allegedly began marketing those rods to Endurall clients. During this time, Edwards maintained his office within the DHE, LLC building while working for Skye Petroleum, purporting to market paraffin products to many of the same clients he formerly serviced as a director of En-durall.
In June 2014, Pattridge and Gardner filed fifth and sixth amended and supplemental petitions seeking, among other things, a permanent injunction to enforce the non-compete and damages resulting from Edwards’ alleged violation of that agreement. A trial was held, and the trial court found that the non-compete was valid and enforceable based on the parties’ intent when including the phrase “as amended” within the non-compete. This court denied a supervisory writ filed by Edwards concerning the trial court’s judgment declaring the non-compete valid. Trial continued, and the trial court' found that Edwards had violated the non-compete when he, among other things, used the money from the sale of his Endurall stock to assist his son in the promotion of DHE, LLC’s operations. The trial court ordered a Impermanent injunction prohibiting Edwards from competing in or assisting others in competing in the rod guide business until the expiration of the non-compete on July 31, 2015. A ruling was issued on June 25, 2014, giving written reasons, and a judgment in this matter followed on October 20, 2014. Due to Edwards’ violation of the non-compete, the trial court determined' he was liable to Endurall. After a separate hearing to consider damages, the trial court ordered Edwards to pay Endurall damages, attorneys fees, and costs for breaching the non-compete.[1] Edwards now appeals the judgment.[2]
DISCUSSION

Standard of Review

It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Benton v. Clay, 48,245 (La.App.2d Cir.08/07/13), 123 So.3d 212. To reverse a fact finder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Brewer v. J.B. Hunt Transport, Inc., 2009-1408 (La.03/16/10), 35 So.3d 230. Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was *196 right or wrong, but whether, in light of the record reviewed in its entirety, the fact finder’s conclusion was. a reasonable one. Id. The reviewing court must give great weight to factual conclusions of the trier of fact; .where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Khammash v. Clark, 2013-1564 (La.05/07/14), 145 So.3d 246, 258.

Validity and Enforcement

On appeal, Edwards argues for the application of La. R.S. 23:921 as it existed in 2004, which did not expressly authorize non-compete agreements between shareholders and corporations. He claims the strong public policy in Louisiana prohibiting non-compete agreements protects him from being bound by the agreement he signed with Endurall in 2004. The trial court determined, in accordance with the rules of contract interpretation and in light of the parties’ intent, that the applicable law governing this non-compete is the statute as it existed at the time the dispute arose in 2012. We agree with the trial court’s interpretation of the terms of this non-compete and its finding that the use of “La. R.S. 23:921, as amended” was evidence of the parties’ intent to include future amendments to the statute Rand use the law in existence at the time of judicial determination for the resolution of disputes.
Here, the non-compete states in pertinent part:
This NON-COMPETITION AND PROPRIETARY INFORMATION AGREEMENT (“Non-Compete Agreement”) is entered into- as of June 21, 2004, by and between, Billy J. Edwards ... and Endurall .,. in connection with that certain Shareholder Agreement (the “Shareholder Agreement”) dated June 21, 2004, among the intial shareholders of Endurall. In consideration for and’ as an essential condition of the issuance of shares to Edwards by Endu-rall, Edwards and Endurall agree as follows:
* * #' ■
5. Enforceability. The existence of any claim or 'cause of action of Edwards against Endurall, or any shareholder of Endurall, whether predicated on this Non-Compete Agreement or otherwise, shall not constitute a defense to the enforcement by Endurall of the covenants of Edwards contained in this Non-Compete Agreement. In addition, the provisions of this Non-Compete Agreement shall continue to be binding upon Edwards in accordance with its terms, notwithstanding Edwards’ divestiture of ownership of common stock in Endurall. In the event that a court of competent jurisdiction determines that this Non-Compete Agreement does not meet the requirements of La. R.S. 23:921, as amended, Edwards and Endurall agree that the court shall reform this Non-Compete Agreement to the extent necessary to meet the requirements of La. R.S. 23:921, as amended. In the event the terms of this Non-Compete Agreement are breached, Endurall many seek various remedies at law or equity and injunctive relief. (Emphasis added).
Louisiana R.S. 23:921, as it existed in 2004, stated in general that non-compete agreements “shall be null and void,” except those pertaining to a person selling the goodwill of a business or a , person employed as an agent, servant or employee. La. R.S. 23:921(B) and (C). In 2008, La. R.S. 23:921 was amended to add subsections (J), (K), and (L) which specifically addressed, respectively: corporations and *197 the individual shareholders; ^partnerships and the individual partners; and, limited liability companies and the individual members. It is undisputed that the statute, post>-2008 amendment,- specifically allows for the type of agreement contested here; therefore the issue is whether the statute as it existed -at the of time execution governs the validity of the non-compete or if the parties intended .them contract to allow for and include amendments to the statute at the time of judicial determination.
A non-competition agreement is a contract between the parties and should be construed according to the general rules of interpretation of contracts. La. C.C. arts.2045-2057; SWAT 21 Shreveport Bossier, Inc, v. Bond, 2000-1695 (La.06/29/01), 808 So.2d 294. A contract establishes the law between the parties, and the purpose of contract interpretation is to determine the common intent of the parties. La. C.C. art.2045. Ordinarily, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrinsic evidence. RJAM, Inc. v. Miletello, 45,176 (La.App.2d Cir.04/14/10), 44 So.3d 283, writ denied, 2010-1127 (La.09/17/10), 45 So.3d 1049. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. A clear and unambiguous clause in a contract should not be disregarded so as to pursue its spirit; it- is not the court’s duty to “bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties.” Clovelly Oil Co. v. Midstates Petroleum Co., 2012-2055 (La.03/19/13), 112 So.3d 187 at 192. Courts must interpret contracts in a “common-sense fashion,” giving the words of the contract their “common' and usual significance.” Id. Each provision must be interpreted in light of the other provisions of the contract so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050.
Here, the trial court considered paragraph five of the non-compete to be of utmost importance in deciding this controversy. It found that Edwards was a shareholder and not an employee of Endu-rall, and analyzed the intent of'the parties without making significant modifications to the terms originally included by them. The trial court determined that according to the rules of contractual interpretation the term “as amended” must be given effect; otherwise that term would be rendered superfluous, contrary to the aim of the Civil Code. To assume “as amended” referenced the 2004 version of law, and only those amendments previous to 2004, is less than reasonable. The trial court found the inclusion of “as amended” in reference to La. R.S, 23:921 evidenced the parties’ intent to have the law in existence at the time of judicial determination govern the non-compete’s validity. The parties must have anticipated that the law might not necessarily be the same in the future as it was at the time of execution. The trial court’s finding based on the explicit addition of “as amended” in reference to La. R.S. 23:921 in the non-compete does not lead to absurd consequences. This is especially true considering the history of La. R.S. 23:921, which includes frequent amendments by the legislature.
lsMoreover, had the trial court found that the statute as it existed in 2004 governed the validity of this non-compete, the outcome would:have been the same. Regardless: of the label- attached to- Edwards at the time of signing, i.e. shareholder or employee, it is clear that the *198 policy considerations of La. R.S. 23:921 do not apply in this case. The public policy restricting non-compete agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. SWAT 2k, supra. Previous to the 2008 amendment, the form of the contract and the label attached to the individual were treated as immaterial when determining the applicability of La. R.S. 23:921. The pertinent inquiry included considering if the parties are on equal footing, if the terms are fair for all parties, the amount of control over any one party, the circumstances under which the contract was executed, and the effect on the individual’s right to engage freely in his occupation after termination. Louisiana Smoked Products, Inc. v. Savoie’s Sausage & Food Products, Inc., 1996-1716 (La.07/01/97), 696 So.2d 1373, 1380. Prior to 2008, Louisiana courts generally held that non-compete agreements that were not employment in nature were outside the scope of Title 23. See Louisiana Smoked Products, supra; Winston v. Bourgeois, Bennett, Thokey & Hickey, 432 So.2d 936 (La.App. 4th Cir.1983). The 2008 amendment clearly brought those named business entities under the umbrella of La. R.S. 23:921.
ImEdwards is a businessman: he started a company in the 1980s, became successful, and created a new company with new business partners. All parties were on equal footing — Pattridge, Starks, and Edwards each had 33% of the shares. All parties were officers and directors of Endurall and had equal bargaining power. During the trial, Edwards admitted that he believed the agreement was valid and enforceable at the time he signed it, and further agreed that signing the non-compete was a contingency necessary to the issuance of stocks, i.e. if Starks, Edwards, Pattridge, and Gardener had not all signed a non-compete agreement intending to be bound by it, then Endurall would not have been created. It was clearly important to the founders of Endurall that the parties all agreed to devote their energy to the development of the company without concern over a principal leaving to form a competing entity.
Edwards was compensated over $1 million for his shares of the Endurall stock. Further, his ability to generate income was not hindered by the constraints of the non-compete with Endurall, as evidenced by his position with Skye Petroleum. If Edwards had desired to continue work in the rod guide business the only thing he had to do was respect the narrow scope of the agreement he made with Endurall and either wait out the two-year time period or go work outside of the geographical area in which Endurall conducted business. Edwards did neither: he immediately took the money he was paid for his shares of stock and helped his son found a company designed to compete directly with Endu-rall.
|nWe agree with the trial court’s interpretation of this contract and its finding that the parties intended to be bound by the agreement they made in 2004. The reformation requested by Pattridge and Gardner to exchange the term “shareholder” for “employee” would have required the trial court to alter the non-compete’s construction, and effectively make a new “employment” contract between the parties. Instead, the trial court followed the rules of contractual interpretation to determine that the intent of the parties was to create a valid non-compete agreement. The trial court did not “bend the meaning of the words of this contract” in finding the parties took great care to ensure the validity of this agreement would endure the evolution of La. R.S. 23:921, as amend *199 ed, over time. The trial court has made a reasonable evaluation of the credibility of the parties, and determined, in light of the parties’ intent, that the applicable law governing this non-compete is the law as it existed at the time the dispute arose in 2012. It is undisputed that La. R.S. 23:921, after the 2008 addition of subsection (J), allows for shareholder/corporation non-competes; therefore it is unnecessary to discus the validity of this non-compete under that law. Further, it is clear that the public policy concerns of La. R.S. 23:921 to promote fairness and protect those in a lower negotiating position from contracting away their ability to generate income are not relevant under these facts. We find that both the statute and equity support a finding that this non-compete is valid, and Edwards’ assignment of error coneerning the validity and enforceability of this non-compete is without merit.

_[i¡Scope and Reformation

Edwards alleges the scope of the non-compete agreement is overly broad, and therefore the agreement is not enforceable under Louisiana law. In addition to concluding that the non-compete would be considered under the version of La. R.S. 23:921 in effect at the time of judicial determination, the trial court also determined that the non-compete agreement required reformation of its geographical limitations to bring it within the statutory requirements. Although we agree with the trial court’s exercise of discretion in its reformation of this agreement under these circumstances, Edwards’ assignment of error is moot.
In its oral ruling on May 1, 2014, the trial court reformed the geographical limitations of the non-compete to encompiass only “the five listed Louisiana parishes and any municipalities in those parishes where [Endurall] may be doing business.” This reformation was not reiterated in the judgment. Neither party objected to this reformation at trial, and both signed the October 2014 judgment agreeing-to its form and substance.. -Since the judgment does not contain reformation language concerning the scope of the non-compete and the injunction granted to enforce it, the scope remains- overly broad. However, the issue of the geographical scope of this non-compete is no longer relevant to this dispute as the temporal limitation on the non-compete expired- July 31, 2015, making the issue moot.

Breach and Remedy

The trial court enjoined Edwards from competing in and assisting others in competing in the rod guide business until the expiration of the hsnon-compete on July 31, 2015. Edwards argues the trial court made a legal error in granting the injunction enforcing the non-compete. We disagree.
Louisiana R.S. 23:921(H) provides the remedy for a violation of a non-compete agreement:
H. Any agreement ... shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor’s failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
In determining that Edwards breached the non-compete, the trial court stated in its ruling that the evidence at trial clearly showed that Edwards violated the non-compete. In its reasons for ruling, the trial court specifically cited the timing and destinations of Edwards’ business trips on behalf of Skye Petroléum and the more than coincidental happenstance that those trips coincided with the opportunity for Edwards to conduct DHE, LLC business. It also took notice of Edwards’- admissions *200 that: he was distributing Gary’s. phone number on behalf of DHE, LLC; he helped obtain the building for DHE, LLC; and, he had an office in that same building. The trial court considered that the money Edwards received from the sale of his stock in Endurall had been pledged to secure the loan for the founding and operation of DHE, LLC. The aggregation of these facts provided a reasonable basis for the trial court to conclude that Edwards violated the non-compete, and its findings were not an abuse of discretion. In accordance with Louisiana law, the trial court ordered injunctive relief enforcing the terms of the agreement where it found a violation of those |14terms. For these reasons, we find the trial court did not err in its judgment holding Edwards in violation of the non-compete he signed with Endu-rall in 2004, and Edwards’ allegations concerning the issuance of a permanent injunction are without merit.
Conclusion
For the foregoing reasons, the judgment of the trial court enforcing the hon-compete in favor of Pattridge, Gardner, and Endurall, and against Billy Joe Edwards is affirmed. All costs of this appeal are assessed to Billy Joe Edwards.
AFFIRMED.

. The issue of damages has been appealed separately.

. Although Starks is named as a defendant in this matter, it was not alleged that he had any involvement in DHE, LLC and competing with Endurall. Starks was named as a defendant in the original petition on allegations that he used the proprietary information of Endurall for the benefit of Vector and the events which led to the dissolution preceding and eventual stock sale. The trial court found Greg Edwards and various other defendants added by subsequent amendments to the petition were not parties to the non-compete, which was between Edwards and Endurall. The trial court declined to extend the injunction to those parties because Pattridge and Gardner failed to prove the necessary "intimate” connexity. Pattridge and Gardner have not appealed this finding; therefore this opinion addresses only the judgment ordering a permanent injunction against Billy Joe Edwards and his appeal of that order.