Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,557-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ORIGIN BANK                                      Plaintiff-Appellee

versus

JPS AERO, L.L.C., JPS                            Defendant-Appellant
AVIATION, L.L.C., K. PAUL
BULLOCK, AND MARGARET L.
BULLOCK

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020-1229

Honorable Wilson Rambo, Judge

* * * * *

SHOTWELL, BROWN & SPERRY,           Counsel for Appellant,
A Professional Law Corporation      K. Paul Bullock
By: Clarence Allan Martin, III

LAW OFFICE OF W. KYLE GREEN, LLC     Counsel for Appellee,
By: W. Kyle Green                    Origin Bank
    Rebekah H. Wade

AYRES, SHELTON, WILLIAMS, BENSON     Counsel for Intervenor/
& PAINE, LLC                         Appellee, JCCK
By: Curtis Ray Shelton               Enterprises, LLC

* * * * *

Before STONE, STEPHENS, and MARCOTTE, JJ.

**MARCOTTE, J.**

This appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Wilson Rambo presiding. Appellant-Defendant, K. Paul Bullock, appeals the trial court's judgments granting a motion for partial summary judgment filed by appellee-plaintiff, Origin Bank, finding that he owes Origin Bank $4,201,060.18, and denying his motion for a new trial. For the following reasons we affirm the trial court's judgments.

On May 7, 2020, Origin Bank ("Origin") filed a petition on a promissory note, naming as defendants: (1) JPS Aero, L.L.C. ("Aero"); (2) JPS Aviation, L.L.C. ("Aviation")[1]; (3) K. Paul Bullock ("Paul"); and (4) Margaret L. Bullock ("Margaret").[2] Origin stated that defendants were indebted to it for $4,201,060.18, plus interest, attorney fees, and costs. Origin alleged in its petition that on December 10, 2015, Paul executed a promissory note in the amount of $4,429,600 as a manager of Aero and a member on behalf of Aviation. A copy of the promissory note was attached to the petition. It stated that the note was for Loan No. 5001195-10001 and was payable on demand or was payable by a schedule provided in the note. The first payment was due on January 10, 2016.

Per the terms of the note, if Origin declared the note to be in default, it had the right to prospectively fix the interest rate until paid in full. The rate depended upon the amount of original principal that remained on the note.

---

[1] Aviation is a member of Aero.

[2] Margaret and Paul were married when the relevant documents in this case were executed.

The note also included a provision for attorney fees. It was signed by "K. Paul Bullock, Manager of JPS Aviation, LLC."

In its petition, Origin claimed that defendants failed to pay the scheduled installments due starting May 10, 2019, through April 10, 2020, and declared that the note had matured in its entirety. Origin stated that the unpaid amount due on the note was $4,201,060.18, plus interest, attorney fees, and costs. Origin attached to its petition a copy of the written demand for payment it made to defendants, dated February 18, 2020. Origin said in its petition that defendants failed to pay the note within 30 days of written demand, as per the terms of the note.

Origin stated that on December 10, 2015, Paul, as manager of Aero and as a member of Aviation, executed an aircraft security agreement granting a continuing security interest in the collateral to secure its indebtedness to Origin. The collateral was defined as the aircraft, its engines and avionics, all log books, attachments, etc., and all rents, monies, and proceeds related to the use, rental, sale, lease, or other disposition of the collateral.

The term "aircraft" referred to a Raytheon Aircraft Company 400A with an FAA Registration Number of N400XT and a serial number of RK-137.[3] The security agreement defined the indebtedness secured as the promissory note dated December 10, 2015, executed by Aero.

---

[3] Throughout the record, the aircraft is also referred to as the "Nextant jet," or "Nextant 400 jet."

The aircraft security agreement originally, using printed language, described the aircraft as a "2012 Nextant 400XTI with an FAA Registration Number of N209BK (Serial Number RK-137)." That language was crossed out and the information about the Raytheon plane was handwritten above the marked-out language.

2

According to the petition, on September 3, 2014, Paul executed a commercial guaranty wherein he "absolutely and unconditionally" guaranteed payment of the indebtedness of the borrowers, Aero and Aviation, to Origin of all the borrowers' obligations under the "Note and Related Documents." A copy of the guaranty was attached to the petition. It provided that Paul's liability was unlimited and the obligations were continuing. Origin said that the obligations sued upon were included in the guaranty that Paul executed. Margaret executed a similar guaranty. Aviation, through its manager, Jason P. Bullock ("Jason"), Paul and Margaret's son, executed a similar guaranty. Origin asked that its security interest in the aircraft be recognized and enforced and for a judgment in its favor in the amount of $4,201,060.18, plus attorney fees, interest, and costs.

On December 29, 2020, Paul answered the petition denying Origin's allegations and stating that the bank did not have a cause of action. Paul stated that he was formerly a member of Aviation and he signed "certain guaranty agreements with Origin." He denied that the guaranty mentioned in Origin's petition was applicable, and he claimed that he provided Origin with a notice limiting and/or terminating any guaranty provided to the bank. On July 8, 2021, a default judgment was signed by the trial court against Margaret.

On November 4, 2021, Origin filed a motion for partial summary judgment arguing that there was no genuine issue of material fact present in the case as to Paul. Origin argued that Paul's liability was unlimited and the obligations continuing; therefore, the obligations sued upon were included in Paul's guaranty. Origin attached to its motion for partial summary

3

judgment: (1) the promissory note, which was for Loan No. 5001195-10001; (2) the aircraft security agreement; (3) the commercial guaranty Paul signed and the guaranties executed by Margaret and Jason; (4) an affidavit as to military service and status report; and (5) an affidavit of correctness as to the attachments to the petition on the promissory note, signed by F. Randall Impson ("Impson").

Paul's guaranty provided the following pertinent language:

> **CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE** …Guarantor absolutely and unconditionally guaranties full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents … Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

> **BORROWER'S INDEBTEDNESS.** The words "Borrower's Indebtedness" … means all of the principal amount outstanding from time to time and at any one or more times, accrued, unpaid interest thereon, [etc.] … that Borrower … owes or will owe … whether now existing or hereafter arising.
> …

> **CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. (emphasis in original)

Paul's guaranty also stated that the terms "Borrower" referred to Aero, "Guarantor" referred to Paul, and "Lender" referred to Community Trust Bank, now Origin Bank. The terms "Note" meant "all of Borrower's promissory notes and/or credit agreements," and "Related Documents" meant "all promissory notes, credit agreements, loan agreements, [etc.] …

whether now or hereafter existing, executed in connection with Borrower's Indebtedness."

Paul's guaranty also stated in the section titled "Cancellation of Agreement; Effect":

> Unless otherwise indicated under such a written cancellation instrument, Lender's agreement to terminate or otherwise cancel this Guaranty shall affect only…Guarantor's continuing obligations and liability to guarantee Borrower's Indebtedness incurred, originated and/or extended…after the date of such a written cancellation instrument; with Guarantor remaining fully obligated and liable under this Guaranty for any and all of Borrower's Indebtedness incurred, originated, extended, or committed to prior to the date of such written cancellation instrument.

The first page of the guaranty did not include a loan number or identify a particular loan; the space for that information was left blank. But the subsequent pages included the language, "Loan No. 7353092." Paul's guaranty was executed by him and included the statement, "Each undersigned guarantor acknowledges having read all the provisions of this guaranty and agrees to its terms … This guaranty is dated September 3, 2014."

Origin also attached to its motion the affidavit of Bryan Burgess ("Burgess"), a representative of Origin, who averred that he had personal knowledge of Paul's account, the underlying debt, the promissory note in question, and Paul's commercial guaranty. Burgess asserted that those documents were made and kept in the course of the bank's regularly conducted business activity, which was its practice. Burgess stated that the records were kept by a person who had personal knowledge of the facts recorded and the records were entered into the bank's records at or near the time they were executed. Burgess further declared that Paul executed a

5

commercial guaranty, dated September 3, 2014, in which he guaranteed payment of Aero's indebtedness to Origin "under the Note and Related Documents." Burgess stated that under Paul's guaranty, his liability was "unlimited and the obligations were continuing."

Origin stated that Burgess' affidavit showed that Paul was indebted to it in the amount of $4,201,060.18, plus interest, attorney fees, and costs. Origin said that the attachments to its motion established a *prima facie* case against Paul and that he could not meet his burden of proving that there was a genuine issue of material fact. Origin asked that its motion be granted and there be a judgment in its favor against Paul for $4,201,060.18.

Paul opposed the motion for partial summary judgment, objecting to Burgess' affidavit, arguing it attempted to state legal conclusions which should have been excluded. Paul particularly objected to Burgess' statement in his affidavit that Paul's guaranty was "unlimited and the obligations continuing," and that the obligations being sued upon in the petition were included in his guaranty.

Paul stated that subsequent to the purchase of the aircraft, he sold all of his interest in Aviation to Margaret and Jason, effective December 31, 2017. Paul claimed that he informed Origin by letter, dated August 28, 2018, of the termination of any guaranty held by the bank. Paul argued that his guaranty was not self-proving, because it was not in authentic form or notarized. Paul contended that Impson's affidavit of correctness made no attestation as to the correctness, validity, or applicability of Paul's guaranty.

Paul also stated that Burgess' affidavit correctly said that his guaranty was dated September 3, 2014, and it was for the "performance and discharge

6

of all of borrower's obligations under the Note and Related Documents." Paul said that the loan being sued on in this case, Loan No. 5001195-10001, was signed on December 10, 2015. Paul argued that the front page of his guaranty contained no loan number references, but the following pages referred to Loan No. 7353092. Paul contended that his guaranty was applicable to a different loan. Paul stated that the fact that his guaranty carried no loan number on the first page, but did have a loan number on subsequent pages, raised an issue of fact as to whether it was one document or different documents pieced together.

Paul pointed out that the first page of his guaranty stated that it was for the "performance and discharge of all Borrower's obligations under the Note and Related Documents." Paul said that the guaranty was made for an independent loan, Loan No. 7353092, made in September 2014, so it could not be for the "Note and Related Documents" on the Raytheon plane, which was a new loan made for the purchase of the aircraft in December 2015.

Paul stated that as a part of the sale of his interest in the principal obligor companies, the purchasers were to have him released from the guaranties, including any guaranty related to the Raytheon aircraft. There was a delay in getting the release, so Paul sent a written revocation of the guaranties to Origin. Paul asked that the trial court sustain his objections to Origin's attachments to its motion for partial summary judgment and deny the motion.

Paul attached his affidavit to his opposition. In that affidavit he averred that his commercial guaranty was not executed in connection with the promissory note and loan described in Origin's petition. He stated that

he attached a copy of the letter he sent to Origin revoking all guaranties with the bank, "particularly with regard to any guarant[y] on the Nextant jet aircraft." He attached a copy of the bill of sale of his interest in Aviation to Margaret and Jason. He also attached the written revocation of all of his guarantees with Origin, dated August 28, 2018. The written revocation stated (verbatim):

> Pursuant to Louisiana Civil Code Article [3061], I hereby give notice, effective this date, of termination of each and every guaranty and surety agreement granted by me to Origin Bank or its predecessor for obligations of JPS Aviation, LLC, including but not limited to credit card account number _____, JPS Aero loans for N209BK, Nextant Beech 400, and N204BK, Beechcraft King Air 250, and JPSG loans for N206BK, Beechcraft Baron.

Origin filed a reply arguing that in Burgess' affidavit, he was directly quoting Paul's guaranty when he said that Paul's "liability was unlimited and the obligations were continuing." Origin again stated that it made a *prima facie* case that Paul was indebted to the bank and had signed a guaranty. Origin stated that Paul's guaranty said he was guaranteeing that he would discharge all of his obligations under the "Note and Related Documents." Origin contended that Paul's commercial guaranty defined "Related Documents" as "all promissory notes, credit agreements, loan agreements, [etc.] … whether now or hereafter existing." Origin stated that the term "Borrower's Indebtedness" meant any loan and accrued interest "from any and all present and future loans … [the debtor] owes or will owe." Paul's guaranty made many references to future loans or indebtedness as being covered by his guaranty. Origin argued that no genuine issue of material fact was created by Paul's guaranty being executed at a different time than the promissory note.

8

Origin argued that at no time did it release Paul from his loans and guaranties associated with Aviation. Origin maintained that the fact that Paul was to be released from his obligations through the sale of his interest in Aviation to Margaret and Jason was irrelevant to Origin's motion for partial summary judgment, because the bank did not enter into any agreement with Paul. Origin again asked that its motion be granted and the trial court find Paul liable for the debt.

On April 11, 2022, a hearing was held on the motion for partial summary judgment. On July 14, 2022, the trial court granted Origin's motion for partial summary judgment, finding that Paul owed the bank $4,201,060.18, plus applicable interest, attorney fees, and costs. The trial court also reserved any of Origin's rights it had against any of the defendants or guarantors and recognized the bank's security interest in the Raytheon Aircraft, with an FAA registration number of 400XT and serial number of RK-137.

On July 27, 2022, Paul filed a motion for a new trial. Origin opposed the motion. On August 11, 2022, the trial court provided reasons for its July 14, 2022, judgment. The court stated that Paul sending a letter to Origin revoking his guaranty did not extinguish his obligation to the bank, even though he ceased to be involved in Aviation's and Aero's business operations prior to any default. The trial court found that Paul signed a continuing personal guaranty, which envisioned future financial transactions not yet existing, but for which Paul agreed to be liable. The trial court stated that Paul's quarrel was with those that did not honor their agreement to have him removed from the continuing personal guaranty and have that obligation

9

extinguished. The court said that that agreement in no way affected the rights of Origin, who was not a party to that agreement.

The trial court explained that it was not persuaded by Paul's argument that the guaranty referenced a particular loan number and, therefore, only applied to that loan. The court said that it was presented with no evidence showing that the documents Origin provided to the court were unreliable or inadmissible. The court stated that no genuine issue of material fact was created by any discrepancy in Origin's paperwork, because Paul was obligated for any loans made to Aero by Origin.

On December 14, 2022, following a hearing, the trial court denied Paul's motion for a new trial and costs were assessed to him. Paul now appeals the trial court's judgment granting Origin's motion for partial summary judgment and its ruling denying his motion for a new trial.

**DISCUSSION**

Paul's sole assignment of error contends that the trial court erred in granting Origin's motion for partial summary judgment, because genuine issues of material fact remained with regard to proof by Origin. Paul asks that this court reverse the trial court's ruling on Origin's motion for partial summary judgment and remand the case for further proceedings.

*Motions for Summary Judgment*

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219.

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002; *Bank of Am., N.A. v. Green, supra*. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). At the time that the trial court considered Origin's motion for partial summary judgment, the only documents that were permitted to be filed in support of or in opposition to a motion for summary judgment were pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[4] La. C.C.P. art. 966(A)(4); *Bank of Am., N.A. v. Green, supra*.

The burden of proof rests with the mover. The adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document

---

[4] The Louisiana Legislature has since expanded the types of documents that may be filed in support of or in opposition to a motion for summary judgment.

shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. La. C.C.P. art. 966(D)(2).

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported, as provided in La. C.C.P. art. 967(A), an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).

*Contract of Continuing Guaranty*

La. C.C. art. 3035 provides that "suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." A contract of continuing guaranty is equivalent to a contract of suretyship and the two terms may be used interchangeably. *745 Olive St., L.L.C. v. Optimal Wellness, LLC*, 54,778 (La. App. 2 Cir. 11/16/22), 351 So. 3d 890. Louisiana courts routinely grant lenders' motions for summary judgment against guarantors upon proof of both the existence of an underlying debt and the guarantor's signature upon a guaranty agreement covering that debt. *Whitney Bank v. Carbine*, 19-1070 (La. App. 4 Cir. 6/24/20), 302 So. 3d 115.

Suretyship must be express and in writing. La. C.C. art. 3038. Contracts of suretyship are subject to the same rules of interpretation as contracts in general. *745 Olive St., L.L.C. v. Optimal Wellness, LLC, supra.* A surety is liable to the creditor in accordance with the provisions of the Civil Code, for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity. La. C.C. art. 3045. The surety's contract need not observe technical formalities, but must contain an absolute expression of intent to be bound. *Fleet Fuel, Inc. v. Mynex, Inc.*, 40,683 (La. App. 2 Cir. 3/8/06), 924 So. 2d 480, *writ denied*, 06-0762 (La. 6/23/06), 930 So. 2d 977.

*Burden of Proof and Act Under Private Signature*

Paul argues that Origin failed to prove that he signed the guaranty and that the guaranty applied to the debt in question. He contends that Origin attached the commercial guaranty as its business record to its motion for partial summary judgment without doing more to meet its burden of proving that Paul was the person who signed that particular document. Paul argues that the trial court considered the merits, made credibility determinations, and weighed evidence in making its judgment. Paul states that the guaranty is not self-proving, because it is not in authentic form, but is rather an act under private signature, which requires that the signer acknowledge that it is his signature, which Paul has not done.

Origin counters that the authenticity of Paul's signature on the guaranty was affirmed by Burgess' affidavit. Origin points out that Paul did

13

not specifically deny that he signed the guaranty so his signature should be deemed acknowledged.

Where business records are concerned, the courts have deemed La. C.C.P. art. 967 satisfied when the affiant is qualified to identify the business records as such. The affiant has not been required to show that he personally prepared the business records, or that he had direct, independent, firsthand knowledge of the contents thereof. *Bank of Am., N.A. v. Green, supra.*

An act under private signature is regarded *prima facie* as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof. La. C.C. art. 1836. A party against whom an act under private signature is asserted must acknowledge his signature or deny that it is his. La. C.C. art. 1838. A general denial is insufficient to constitute denial of a signature and the disavowal of signature is an affirmative defense which must be specially pled. La. C.C.P. art. 1005; *Selber Bros., Inc. v. Bryant*, 406 So. 2d 251 (La. App. 3 Cir. 1981). A party who refuses to either acknowledge or deny his signature should be held to have acknowledged it. 5 La. Civ. L. Treatise, Law of Obligations § 12.31 (2d ed.).

We find that Burgess was qualified to identify the business records of Origin under La. C.C.P. art. 967, because he was a representative of the bank and he was familiar with the bank's method of compiling documents. He also avowed that: 1) the records were made and kept in the course of the bank's regularly conducted business activity; 2) it was Origin's regular practice to make or keep the records; 3) the information in the records was recorded by a person with personal knowledge of the facts recorded; and 4)

the entry into Origin's records was made at or near the time of the transaction. Burgess identified the note signed by Paul as manager of Aviation, the aircraft security agreement he signed, and the commercial guaranty at issue. He named Paul as the individual who executed the commercial guaranty.

Paul admitted in his answer that he signed "certain guaranty agreements with Origin," and he then denied that any of those guaranties were applicable to the debt at issue. Nowhere in his answer did he specifically deny that he signed the commercial guaranty as required by La. C.C.P. art. 1005. He later framed his argument as Origin failing to adequately prove that he signed the commercial guaranty. First, such language does not operate as a explicit denial. Second, that insufficient language was not included as an affirmative defense in his answer to Origin's petition.

Additionally, Paul sent a written revocation of his guaranty to Origin dated August 28, 2018. The written revocation stated that he was terminating "every guaranty and surety agreement granted to me by Origin … for obligations of JPS Aviation." He attached a copy of that letter to his opposition to Origin's motion for partial summary judgment. He acknowledged in his revocation that he signed guaranties in the bank's favor. Paul's claims that Origin offered inadequate proof that he signed the commercial guaranty are not convincing. We find that Origin offered sufficient proof that Paul signed the commercial guaranty at issue in this case.

15

*Relationship Between the Debt and the Commercial Guaranty*

Paul argues that there is no relationship between the guaranty and the debt upon which he is being sued. Paul states that the loan numbers on his guaranty do not match those on the promissory note provided by Origin. Paul argues that the language from the guaranty, which stated it was for the "Note and Related Documents," covered a different loan than the one at issue. He also points out that the commercial guaranty was executed prior to when the subject loan was signed. Paul questions the form of the guaranty, stating it is unclear if it was one document or a piecemeal document, making it questionable in form.

Origin contends that there was no genuine issue of material fact created by Paul's guaranty referencing a different loan number than the one for which he was being sued, because he was obligated to Origin for any and all loans made to Aero by Origin under a continuing guaranty.

Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. When the words of the contract are clear, unambiguous, and lead to no absurd consequence, no further interpretation may be made or consideration of extrinsic evidence be had in search of the parties' intent, and the contract must be enforced as written. La. C.C. art. 2046; *Pattridge v. Starks*, 50,135 (La. App. 2 Cir. 11/18/15), 181 So. 3d 192, *writ denied*, 15-2325 (La. 2/19/16), 187 So. 3d 463.

16

The commercial guaranty includes several references to Aero's future indebtedness. The term "Related Documents" referred to the LLC's current and future debt, stating that Paul's liability was "unlimited" and his "obligations are continuing." The commercial guaranty stated repeatedly that it was a continuing guaranty and covered future indebtedness, referencing indebtedness that Aero "owes or will owe … whether now existing or hereafter arising." There was even a section of the guaranty printed in upper-case letters which said that Paul, as guarantor, guaranteed satisfaction of Aero's indebtedness to Origin "NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS." We find that the commercial guaranty was granted by Paul on a continuing basis.

The fact that a different loan number appears on certain pages of the guaranty does not convince this court to conclude that the commercial guaranty was a piecemeal document that required additional proof from Origin to validate it. Having a particular loan number on pages of the document is irrelevant here, because the guaranty is a continuing guaranty. The common intent of the parties was for Paul to provide a continuing guaranty so that he did not have to execute a different guaranty for every new loan that Aero acquired from Origin. We see no evidence showing that the documents that Origin attached to its motion for partial summary judgment were unreliable or inadmissible.

*Revocation of the Commercial Guaranty*

Paul argues that the trial court further erred in finding that his revocation of the guaranty was inapplicable to the subject loan, given that

the status of the loan associated with the guaranty is "unknown" and the revocation occurred when nothing was owed to the bank. Paul asks this court to reverse the trial court and remand the case for further proceedings.

Origin states that the trial court was correct in determining that Paul's act of sending correspondence to Origin was insufficient to extinguish his obligations previously entered into on behalf of Aero. Origin argues that even if the guaranty had been properly revoked, it did not relieve Paul of any obligations that he had already incurred.

A surety may terminate the suretyship by notice to the creditor. The termination does not affect the surety's liability for obligations incurred by the principal obligor, or obligations the creditor is bound to permit the principal obligor to incur at the time the notice is received, nor may it prejudice the creditor or principal obligor who has changed his position in reliance on the suretyship. La. C.C. art. 3061.

Paul's revocation, dated August 28, 2018, was insufficient to extinguish his obligations as guarantor for indebtedness that Aero had already incurred by the date of his revocation. Article 3061 states that the revocation of a suretyship may not prejudice the creditor. Here, Origin would be prejudiced if this court were to find that Paul is not obligated for Aero's debt as a guarantor simply because the debt did not become due before he executed his revocation of the guaranty. Paul is still liable for the debt at issue as guarantor. While Paul sought to have himself released from the guaranty when he sold his interest in Aviation, he did not secure a release from Origin. He contracted for that release with third parties, not Origin. Paul's revocation is inapplicable here.

18

Furthermore, Paul's guaranty stated that he would remain "fully obligated" under the guaranty for any and all of Aero's indebtedness "incurred, originated, extended, or committed to prior to the date of such written cancellation instrument." The guaranty explicitly stated that Paul was still liable for any debt that Aero incurred prior to revocation of his guaranty. Paul contracted with Origin to provide the bank with a continuing commercial guaranty securing Aero's and Aviation's current and future debt with it. His obligations were not extinguished simply because he delivered a written revocation of his guaranty to the bank. Therefore, the trial court's ruling should be affirmed.

## CONCLUSION

The trial court's rulings granting Origin Bank's motion for partial summary judgment and denying J. Paul Bullock's motion for a new trial are affirmed. Costs of this appeal are assessed to appellant.

**AFFIRMED.**